# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

|  |  |  |
|---|---|---|
| IN RE: GARY M. CRANE and MARSA S. CRANE, | ) ) ) ) | |
| Debtors, | ) ) | Case No. 12-CV-2146 |
| THE GIFFORD STATE BANK | ) ) | |
| Defendant-Appellant, | ) ) | |
| v. | ) ) | |
| JEFFREY D. RICHARDSON, CHAPTER 7 TRUSTEE, | ) ) ) | |
| Plaintiff-Appellee. | ) ) ) | |

## **OPINION**

This is an appeal from an Order entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 11-90592). This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). This court has carefully reviewed the arguments of all three parties and the two *amici curiae*.[1] Following this review, this court reverses the Order of the Bankruptcy Court.

---

[1] The court thanks counsel for *amici* Illinois Land Title Association, American Land Title Association, and Illinois Bankers Association for their helpful contributions.

## Background[2]

Debtors Gary and Marsa Crane ("Debtors") applied for and received a number of mortgages on various investment properties. Among those are the two properties presently disputed. Those were located at 908 East Congress Avenue, Rantoul, Illinois, and 48 Gerald Road, Rantoul, Illinois ("the Properties"). The mortgage on the Gerald Road property was executed on September 29, 2004 and recorded in the Office of the Champaign County Recorder on October 5, 2004. (#1, Exh. A, hereinafter "R.", at 114). The loan was evidenced by a promissory note dated September 29, 2004 for $62,000 bearing interest at 6.500% with a maturity date of October 1, 2009 (R. 111). The promissory note referenced the mortgage by date and the Debtors by name (R.111), and the mortgage referenced the promissory note by amount and date (R.114). The mortgage on the East Congress Avenue property was executed on June 11, 2009 and recorded on June 12, 2009, in the Office of the Champaign County Recorder. (R.93). The loan was evidenced by a promissory note dated June 11, 2009 for $53,500 bearing interest at 6.900% with a maturity date of June 15, 2010. (R.90). The promissory note referenced the mortgage by date and property by address (R.90), and the mortgage referenced the promissory note by amount, date, and name of the Debtors (R.93).

On March 31, 2011, Debtors filed for relief under Chapter 7 of the Bankruptcy Code. Plaintiff Jeffrey D. Richardson ("The Trustee") serves as the Debtors' Chapter 7 Bankruptcy Trustee. Defendant The Gifford State Bank ("Gifford") claims that it has valid mortgage liens on the two properties. In the Bankruptcy Court, the Trustee sought to avoid forfeiting the Properties.

---

[2] When no citation is given, facts are taken from Richardson v. Gifford State Bank *(In re Crane)* Nos. 11-90592 (Bankr.), 11-9067 (Adv.), 2012 WL 669595 (Bankr. C.D. Ill. Feb. 29, 2012). Otherwise, citations to the record on appeal are as noted.

He argued that both of the mortgages failed to state the interest rate and the maturity date in violation of 765 ILCS 5/11 and therefore did not give constructive notice to subsequent bona fide purchasers. As a result, the Trustee argued that he is permitted to avoid the mortgages pursuant to 11 U.S.C. § 544(a)(3). Although Gifford does not contest that the mortgages do not include the interest rate and maturity date on their face, it responds that the subject mortgages are sufficient under Illinois law to constitute constructive notice so as to bar avoidance of the liens by the Trustee.

On February 29, 2012, the Bankruptcy Court found that the two mortgages failed to provide constructive notice to the Trustee, and as a result, held that they were avoidable as to unsecured creditors. Accordingly, that court ordered that the Properties were preserved for the benefit of the Debtors' bankruptcy estate.

On June 4, 2012, Gifford (as appellant) filed its Bankruptcy appeal (#1) in this court. On June 25, 2012, Gifford filed its brief (#10). On July 26, 2012, the Trustee (as appellee) filed his Response (#16). On August 17, 2012, Gifford filed its Reply (#17).

**Standard of Review**

A federal district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact only for clear error. *Freeland v. Enodis Corp.,* 540 F.3d 721, 729 (7th Cir. 2008). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 248 (N.D. Ill. 2000). Mixed questions of law and fact are reviewed *de novo*. *In re Winer*, 158 B.R. 736, 740 (N.D. Ill. 1993).

Finally, questions of statutory construction are considered questions of law and are also reviewed *de novo*. *LaSalle Nat'l Bank Ass'n v. Cypress Creek 1*, 242 Ill. 2d 231, 237 (Ill. 2011).

On issues of state law, in the absence of binding Illinois authority a federal court must predict how the Illinois Supreme Court would rule and decide it the same way. *MindGames, Inc. v. W. Pub. Co., Inc.*, 218 F.3d 652, 655-56 (7th Cir. 2000); *In re My Type, Inc.*, 407 B.R. 329, 334 (Bankr. C.D. Ill. 2009) (bankruptcy). In bankruptcy cases, the federal court may refer to "all relevant data including state appellate decisions, state supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *In re Giaimo*, 440 B.R. 761, 769 (B.A.P. 6th Cir. 2010).

Finally, the Bankruptcy Court's implicit finding that the mortgages failed to incorporate the interest rate and the maturity date is a mixed question of law and fact that is subject to *de novo* review. *In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509 (7th Cir. 2011) (mixed questions of law and fact are reviewed *de novo*).

**Analysis**

The Bankruptcy Court found that the two mortgages in question failed to describe, on their face, the maturity date or the interest rate of the underlying debt. Accordingly, that court held that because 1) a mortgage that does not include all the elements required in the Illinois Conveyances Act, including the amount of debt, maturity date, and underlying interest rate, does not give constructive notice to a bona fide purchaser; 2) a mortgage that does not provide constructive notice is voidable; and 3) federal law permits a trustee to avoid any transfer that a hypothetical bona fide purchaser could void, the Trustee was entitled to avoid the mortgage.

Gifford asserts that the Bankruptcy Court misinterpreted relevant state law when it adopted the first proposition. First, Gifford argues that the mortgages do in fact satisfy the requirements of the Illinois Conveyances Act, because the statute encourages, but does not require mortgage documents to include an interest rate or maturity date. Second, Gifford argues that the mortgages were sufficient to provide constructive notice because they incorporated the promissory notes by reference, and the notes included the interest rate and maturity date. Third, Gifford argues that the text of the two cases on which the Bankruptcy Court relied were *dicta*, because the mortgages there were either voidable on other grounds or were actually not avoidable. Fourth, Gifford argues that other cases support the proposition that recorded mortgages like the ones at bar have been held to provide sufficient notice. Last, Gifford argues that the Bankruptcy Court's order was directly at odds with the majority of mortgages issued in Illinois. This court agrees with Gifford.

**I. Requirements in the Illinois Conveyances Act**

   *A. Statutory interpretation*

Analysis of any statute begins with the plain meaning of the words in question. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Courts must assume that words in a statute mean what they say and say what they mean. *Bedroc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004). When the words are unambiguous, courts should look no further than the statute itself. *Id*. Courts must ascribe the plain meaning of a statute unless an absurd result would follow. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

The Illinois Conveyances Act states, in pertinent part, as follows:

> § 11. Mortgages of lands **may** be **substantially** in the following form:
>
> The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the County of ..., in the State of Illinois.
>
> Dated (insert date).
>
> (signature of mortgagor or mortgagors)
>
> [ * * * ]
>
> Such mortgage, when otherwise properly executed, **shall** be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified. . . .

765 ILCS 5/11 (emphasis added). The term "may" is permissive; the term "shall" is mandatory. *See, e.g.*, *Lopez v. Davis*, 531 U.S. 230, 241 (2001). On its face, the statute does not require all those terms; instead, it permits them. The simplest and clearest interpretation of this statute is as a safe harbor clause. As the Bankruptcy Court in this District previously held,

> Section 11 of the Conveyances Act is best interpreted as creating a safe harbor for mortgagees. A mortgage that strictly complies with section 11's outline for form and content is "deemed" to be sufficient and valid as against the mortgagor and, once recorded, as to third parties for constructive notice purposes. A mortgagee who deviates from section 11 risks losing that "deemed" or automatic protection from challenges to the efficacy of its mortgage.

*In re Shara Manning Properties, Inc.*, 475 B.R. 898, 910 (Bankr. C.D. Ill. 2010). This interpretation indicates that as long as a mortgage instrument includes the names, the nature and amount of indebtedness, the interest rate, maturity date, and method of securing the loan, the mortgage will be treated as having all the indicia of reliability necessary to provide constructive

notice. However, the logical inverse of this is not necessarily true. If a mortgage does not include all those factors, it does not necessarily fail to provide constructive notice. Rather, only the contrapositive is true; if a court decides that the mortgage failed to provide constructive notice, then the mortgage must not have included all the aforementioned elements. Thus, the statute is silent as to a mortgage that does not contain all the endorsed terms. *In re Shara Manning* said as much: "Illinois law is clear that while an error or omission in a recorded mortgage concerning the secured debt amount, maturity date or interest rate, may deprive the mortgagee of the benefit of constructive notice, it does not necessarily invalidate the mortgage." *In re Shara Manning,* 475 B.R. at 910.[3]

The Trustee argues, however, that the term "shall" in the second paragraph means that the elements in the first paragraph are mandatory in order to create a valid and binding mortgage. He cites to two Illinois Supreme Court cases, *Caraway v. Sly*, and *Bullock v. Battenhousen*, in support of this proposition. The Bankruptcy Court also cited to *In re Berg* and *In re Shara Manning Properties*. The next two sections discuss why those cases are inapposite. Notably, neither the Bankruptcy Court nor the parties has provided a case in which a mortgage was avoided because it did not include the interest rate and the maturity date on its face, but otherwise identified the loan.

### B. Illinois Supreme Court cases cited by the Trustee

---

[3] The court recognizes that this text is *dicta*; as will be discussed later, the holding in *In re Shara Manning* turned on actual notice, which that court acknowledged in the next sentence: "If it can be shown that a subsequent purchaser had prior actual knowledge of the mortgage lien, the defective mortgage remains valid and enforceable against the mortgagor, the property and the subsequent purchaser." *In re Shara Manning Properties, Inc.*, 475 B.R. 898, 910 (Bankr. C.D. Ill. 2010)

In *Caraway v. Sly*, the Court held that "[w]here the conveyance is in the form of a debt or obligation secured by it, and section 11 of chapter 30 of Hurd's Revised Statutes of 1903, which provides for a statutory form of mortgage, requires that a mortgage in that form shall recite the nature and amount of the indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise." *Caraway v. Sly*, 222 Ill. 203, 205 (1906). But *Caraway* involved a deed that a plaintiff sought to be declared a mortgage, rather than disputing whether an existing mortgage was avoidable. The Illinois Supreme Court noted instead that the "[t]wo essential characteristics of a mortgage are a debt, legal liability, or obligation to be secured, and a conveyance with an intention to secure that debt, liability, or obligation." *Id.* at 205. That Court then held that an outright conveyance of property could not be construed as a mortgage because "[a]n agreement giving the complainant a mere option to pay when he should be able and desire to do so, with an agreement to reconvey upon such a payment, did not constitute a mortgage"—and not because the parties agreed that the instrument created a mortgage but the document was missing certain elements enumerated in the statute. *Id*. at 205-206. Therefore, the language in *Caraway* may be considered *dicta*.

And in *Bullock v. Battenhousen*, the Illinois Supreme Court did not even go so far. Instead, the Trustee seizes on this language: "The policy, though not the letter, of our statutes requires, in all cases, a statement upon the record of the amount secured." *Bullock v. Battenhousen*, 108 Ill. 28, 37 (1883). Other Illinois cases also note this preference, although as Gifford notes, the Trustee was unable to cite to any cases where a mortgage lien was avoided due

to a failure to include those two details.[4] Instead of a mechanical application of law to permit avoidance, it seems that the purpose of requiring a plethora of identifiers in the mortgage is to reduce the possibility of fraud and put the debtor on notice of the mortgage debt.[5] In this way, the Trustee, who does not claim that he was not on notice of the mortgage, should not be permitted to take advantage of a technicality in order to avoid the mortgage.

### C. Federal bankruptcy cases cited by the Bankruptcy Court

Having addressed the Illinois Supreme Court cases, the two cases cited by the Bankruptcy Court will be examined. First, the Bankruptcy Court cited to *In re Berg* for the proposition that "the provisions of 765 ILCS 5/11 are not permissive, but are rather required in order for a mortgage to provide constructive notice to a bona fide purchaser or a trustee in bankruptcy." *In re Berg* permitted the trustee in that case to avoid a mortgage, but the ultimate

---

[4] *See Battenhausen v. Bullock*, 11 Ill. App. 665, 671 (Ill. App. Ct. 1882) ("It has accordingly been held that a mortgage given to secure an existing debt of a fixed amount, but which is described in the condition of the mortgage only as a note due from the mortgagor to the mortgagee, of a certain date, etc., without specifying the amount, is not a valid security as against subsequent purchasers and incumbrancers. *This rule is derived from no specific provision of the registry law*, but the spirit of the registry system requires that the record should disclose with as much certainty as the nature of the case will admit the real state of the incumbrance.") (emphasis added); *Metro. Bank v. Godfrey*, 23 Ill. 579 (1860) ("The spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. If a mortgage is given to secure an ascertained debt, the amount of that debt should be stated; and if it is intended to secure a debt not ascertained, such data should be given respecting it, as will put any one, interested in the inquiry, upon the track leading to a discovery. If it is given to secure an existing, or a future liability, the foundation of such liability should be set forth.").

[5] *Bullock v. Battenhousen*, 108 Ill. 28, 35 (1883) ("If a mortgage is given to secure an ascertained debt, the amount of such debt should be stated. By omitting to so state the debt the widest door is opened for fraud of every description, and to prevent the same the law declares such a mortgage fraudulent and void as to creditors and subsequent purchasers."); *id*. at 37 ("A statement upon the record of the amount claimed to be due informs all what lien is claimed. They know what they must contest, or subject to what they must take, in subsequently dealing with the property. It prevents secret conspiracies between mortgagors and mortgagees as to the fact and amount of indebtedness to the prejudice of subsequent purchasers and creditors, by compelling them to at once make known the real claim.").

decision turned not on whether the mortgage included the interest rate or maturity date on its face, but whether there was *any* credible evidence connecting the mortgage instrument and the promissory notes. *In re Berg*, 387 B.R. 524, 561 (Bankr. N.D. Ill. 2008). There, the mortgage referred to two notes dated August 23, 1998 and July 28, 2000, but did not include any principal debt, interest rate, maturity date, or otherwise describe any terms of the loans referred to in the notes. *Id.* at 542. A demand note was executed by the debtor for $100,000 at 15% interest dated July 28, 2000, and another one executed on July 23, 1998, for $250,000 at 15% interest. *Id*. at 561. The July 23, 1998 note was altered on its face to read August 23, 1998, and the creditor withdrew his claim for that note on the record in open court. *Id*. The two notes did not indicate that they were to be secured by the mortgage. *Id*. The *Berg* court found that "[w]ithout some recorded indicia of reliability tying the [] Mortgage to the [] Note it is impossible to say by the preponderance of the evidence that it is in fact the note secured by the recorded Mortgage." *Id.* Thus, because the trustee there could not be charged with constructive notice of the mortgage, it would be avoided. *Id*. at 561-62. Although this court does not go so far as to agree with Gifford, who argues that *no* underlying lien had been granted on the property, not only is the text *dicta*, but the facts are distinguishable from those in the present case. In *In re Berg*, there was no credible evidence that the promissory notes were associated with the mortgage, with the claim to one of them actually rescinded. Here, there are clear and uncontested references between the mortgages and the promissory notes. Further, the notes spell out conditions of repayment typical of most mortgages, unlike the demand notes in *In re Berg*. Thus, the evidence does not suggest that the Trustee was not given constructive notice.

Second, the Bankruptcy Court cited to *In re Shara Manning Properties, Inc.*, 475 B.R. 898 (Bankr. C.D. Ill. 2010). The facts of that case are even less similar. Not only was the actual dispute over which of two parties had priority, the ultimate determination turned on whether there had been actual notice. *Id*. at 905, 910. The question of constructive notice was not necessary to the holding, much less whether a mortgage could be avoided. Finally, that court did not state, even in *dicta*, that a mortgage that did not include all the identifiers listed in the statute failed to give constructive notice as a matter of law.

*D. Other recent cases in this jurisdiction*[6]

Recently, the Bankruptcy Court in the Southern District of Illinois ruled on a matter directly on point. In *In re Klasi Properties*, a trustee sought to avoid a mortgage, arguing that because the instrument did not state the interest rate or maturity date of the underlying indebtedness on its face, the mortgage was avoidable pursuant to § 544(a)(3). *In re Klasi Properties, LLC*, 12-60013, 2013 WL 211111 (Bankr. S.D. Ill. Jan. 18, 2013).[7] That court held that the documents were sufficient to put the trustee on record notice of the mortgage, which was sufficient to impart constructive notice. After noting the conflict with the Bankruptcy Court's earlier decision in this case, that court held that the mortgage could not be avoided. Judge Grandy wrote:

---

[6] The court also thanks Gifford's counsel for the extensive research discussed in footnote 5 of their Reply brief regarding decisions outside this jurisdiction. Although those cases are not binding on this court, the court acknowledges their persuasiveness.

[7] *In re Klasi*, which was decided on January 18, 2013, was appealed to the United States Court of Appeals for the Seventh Circuit and docketed on February 7, 2013 as No. 13-1277. The docket there notes that briefing was suspended on February 20, 2013, pending resolution of *Peoples National Bank v. Banterra Bank*, No. 12-3079; *see* footnote 8 *infra*.

> The Trustee would have this Court believe that there is some magical significance to the text of § 11 as opposed to operating as a suggested "safe harbor." It defies all logic to suggest that the language of § 544(a)(3) combined with § 11 allows a Trustee to bury his head when any minor non-compliance is found. This is especially true where, as here, the mortgage was recorded in the chain of title, and undisputedly identified the parties, provided a legal description of the mortgaged property, and set forth the amount and purpose of the indebtedness. It also referenced the corresponding loan documents and specifically provided that the terms of the promissory note were incorporated into the mortgage by reference. The Court believes that this information was sufficient to provide the Trustee with constructive notice of the Defendant's interest and, therefore, sufficient to overcome a challenge pursuant to 11 U.S.C. § 544(a)(3).

*In re Klasi*, 12-60013. This court comes to the same conclusion that Judge Grandy did.

To bring the issue into sharp relief, our sister court in the Southern District of Illinois recently reversed the Bankruptcy Court on a similar matter. There, the Bankruptcy Court held that a broad cross-collateralization clause in a mortgage provided sufficient notice to subsequent purchasers such that the trustee could not avoid a mortgage on a different, but unreferenced property. *In re Jones*, 10-41897, 2011 WL 6140686 (Bankr. S.D. Ill. Dec. 9, 2011). The clause stated as follows:

> **CROSS COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable or jointly with others, whether obliged as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations and whether the obligation to repay such amounts may be become otherwise unenforceable.

*In re Jones, 10-41897*. There were no additional terms identifying the other debts. The Southern District reversed, holding that the cross-collateralization clause was so broad and generic that it failed to "describe any other note by amount, date, interest rate or maturity, purportedly secured by the mortgage." *Peoples National Bank, N.A. v. Jones*, 482 B.R. 257, 264 (S.D. Ill. 2012).[8] Accordingly, because "the failure to describe any other debts secured by the [] Mortgage, with particularity, as to the amount and the property, is fatal to [the] Mortgage and prevents the mortgage from securing any debt other than the balance due on the Note," the mortgage was not sufficient "a matter of law to provide record notice, inquiry notice or chain of title notice that any debt than the Note [] was secured by the mortgage." *Id.* at 264-65. Although the Southern District did indicate that "Illinois law [] requires a mortgage to describe the nature of the debt secured, amount secured, due date and interest rate," this language again is *dicta* in that the cross-collateralization clause included *no* identifying information for any other loan, and therefore failed absolutely to put subsequent hypothetical bona fide purchasers on any notice regarding other loans. *Peoples*, 482 B.R. at 263. Here, there was no question at all as to the existence of the loan in question, the property that secured the loan, and the connection between the two. Instead, the Trustee seeks to avoid loans that are not only identifiable, but which are unquestionably identified and connected to their respective mortgages.

**II. Incorporation of required terms by reference to promissory notes**

---

[8] *Peoples National Bank*, which was decided on August 27, 2012, was appealed to the United States Court of Appeals for the Seventh Circuit and docketed on September 11, 2012 as *Peoples National Bank v. Banterra Bank*, No. 12-3079.

In Illinois, "[w]hen a note and the mortgage given to secure it mutually refer to each other, they must be construed together." *Metro. Life Ins. Co. v. Kobbeman*, 260 Ill. App. 508, 512 (Ill. App. Ct. 1931); *see also Matter of Bailey*, 999 F.2d 237, 242 (7th Cir. 1993) ("When a note and the mortgage given to secure it mutually refer to each other, they must be construed together.") (collecting cases). The Bankruptcy Court, in an apparent oversight, omitted any discussion of this issue. The Trustee also did not address this issue in his brief. The documents provided in the record on appeal demonstrate that the mortgages referred to the notes, and the notes referred to the mortgages. Under Illinois law, when "the language of the mortgage quite specifically incorporates by reference the terms of the note, [] subsequent purchasers would be put on inquiry as to the contents of the note so incorporated", such that "subsequent purchasers [] have constructive notice of the due-on-sale clause." *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*, 428 N.E.2d 170, 173 (Ill. App. Ct. 1981). Here, the mortgages clearly stated on their faces that the terms of the promissory notes were incorporated by reference. Both notes, in turn, included the interest rate and the maturity date of the indebtedness. Thus, reading the mortgage instrument and the note in tandem, even if § 5/11 itself can be read to require an interest rate and a maturity date, the Trustee may not avoid the mortgage because all the necessary terms were incorporated by reference to the promissory notes.

**III. Recent amendment by Illinois Legislature**

On December 5, 2012, both houses of the Illinois legislature approved Senate Bill 0016, and on February 8, 2013, the Governor approved the bill, thus enacting Public Act 97-1164. Among other changes, Public Act 97-1164 added 765 ILCS 5/11(b), which states as follows:

> (b) The provisions of subsection (a) regarding the form of a mortgage are, and have always been, permissive and not mandatory. Accordingly, the failure of an otherwise lawfully executed and recorded mortgage to be in the form described in subsection (a) in one or more respects, including the failure to state the interest rate or the maturity date, or both, shall not affect the validity or priority of the mortgage, nor shall its recordation be ineffective for notice purposes regardless of when the mortgage was recorded.

765 ILCS 5/11(b) (effective June 1, 2013). Although the provisions of subsection (b) are effective June 1, 2013, and therefore were not made retroactive to the events occurring in the present litigation, and although the Trustee's rights as a bona fide purchaser pursuant to § 544 vest upon commencement of the bankruptcy case and that subsequent changes in state law cannot affect the Trustee's status, the text of the amendment clarifies, rather than alters § 5/11. *In re Trujillo*, 378 B.R. 526, 538 (B.A.P. 6th Cir. 2007) ("No intervening change in law may be applied retroactively to strip the trustee of previously vested rights under either federal or state law.") The text is therefore persuasive authority, and reinforces this court's reasoning.

Based on the foregoing analysis, this court holds that § 5/11 was intended to create a safe harbor, rather than a mandatory checklist of requirements to be completed *pro forma*. Since § 5/11 advises lenders how best to provide sufficient detail so as to provide constructive notice to a third party purchaser, this court cannot permit the Trustee to avoid the mortgages in question because both were recorded, identified the Debtors, provided a description of the mortgaged property, set forth the amount and purpose of the indebtedness, and incorporated the interest rate and maturity date by reference to a promissory note. The court therefore respectfully disagrees with the Bankruptcy Court's decision.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff-Appellee Richardson's Motion to Cite Authority (#18) is GRANTED.

(2) Defendant-Appellant Gifford's Motion to Cite Authority (#19) is GRANTED.

(3) The Order of the Bankruptcy Court entered on February 29, 2012, is REVERSED. This case is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

(4) This case is terminated in the district court.

ENTERED this 28th day February, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE